IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CARTER, FULLERTON & HAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:12-cv-448 |
| ) | |
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Second Motion for Summary Judgment (Dkt. No. 36) and Plaintiff's Cross-motion for Summary Judgment (Dkt. No. 41). Carter, Fullerton & Hayes ("Plaintiff") brought suit against the Federal Trade Commission ("FTC" or "Defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking injunctive relief and seeking disclosure of agency records improperly withheld from Plaintiff as part of its FOIA request. The Court denied Defendant's First Summary Judgment Motion on February 21, 2013 (Dkt. No. 27) and ordered the FTC to conduct additional searches consistent with the original FOIA request. The Court held a hearing on the parties' cross-motions for Summary Judgment on July 12, 2013.

For the reasons that follow, Defendant's Second Motion for Summary Judgment (Dkt. No. 36) is GRANTED and Plaintiff's Motion for Summary Judgment (Dkt. No. 41) is DENIED.

## BACKGROUND

Carter, Fullerton & Hayes ("Plaintiff"), is a Virginia law firm that represents a not-for-profit organization engaged in oversight of the FTC's regulation of alcohol, although the law

firm has not identified the organization by name. Plaintiff has filed systematic FOIA requests with the FTC seeking undisclosed information relating to the FTC's interactions with the alcoholic beverage industry and for other purposes. Through its FOIA requests, Plaintiff has sought and seeks information about these meetings, the agency's deliberations, persons involved and ultimately insight into the agency's decision-making process.

### A. Plaintiff's Prior FOIA Requests

As noted, Plaintiff has regularly filed FOIA requests with the FTC. Since 2007, Plaintiff has filed four FOIA requests, including this one, each of which has resulted in a civil action. The three requests filed prior to this action sought substantially the same information from the FTC. In addition, Plaintiff has claimed in each civil action that the agency failed to conduct an adequate search as required under FOIA and that the agency improperly withheld responsive records that were not properly exempt from disclosure. The first two cases took place in 2007 and 2009, respectively, before the U.S. District Court for the District of Columbia: (1) *Carter, Fullerton & Hayes LLC v. F.T.C.*, 520 F. Supp. 2d 134 (D.D.C. 2007) ("*Carter I*") and (2) *Carter, Fullerton & Hayes LLC v. F.T.C.*, 673 F. Supp. 2d 1 (D.D.C. 2009) ("*Carter II*"). The third case, *Carter, Fullerton & Hayes LLC v. F.T.C.*, 601 F. Supp. 2d 728 (E.D. Va. 2009) ("*Carter III*"), was filed in this Court. In all three instances, the District Court upheld the adequacy of the FTC's search and its application of the FOIA exemptions.

### B. Plaintiff's May 2011 FOIA Request

Plaintiff submitted its latest FOIA request to the FTC, FOIA-2011-00960, on May 20, 2011. This request was substantially similar to the requests submitted as part of prior requests, and states:

> 1) I request that copies of all documents in your possession relating to liquor; the Care Act, H.R. 1161 or H.R. 5034, post and hold and alcohol pricing laws,

2

caffeinated alcoholic beverages, flavored malt beverages, wine, spirits or malt beverages; malt beverage manufacturers; malt beverage wholesalers; wine and distilled spirits manufacturers; wine and distilled spirit wholesalers; malt beverage, wine and distilled spirits retailers; any organizations representing the aforementioned; and any entity communicating with FTC or any division or office thereof, <u>including without limitation</u> the FTC's Commissioner officers, Bureaus of Competition, Consumer Protection, Economics, General Counsel, Office of Policy and Planning and/or any regional office of the FTC (hereinafter FTC) on any aspect of the regulation of alcohol from date January 1, 2008 through completion of your production for this FOIA request. (emphasis original).

2) Any document regarding the FTC's response and/or compliance with our two previous FOIA requests dated 10/13/2006 (FOIA 2007-00067) and 11/20/2007 other than the documents actually produced to Carter Fullerton & Hayes in response to FOIA these requests. (sic)

3) From January 1, 2008 to the present, all FTC documents related to any communications with other federal, state and local agencies regarding the regulation of alcohol, the legal basis for FTC jurisdiction, and/or any protocols with other federal departments or agencies on alcohol-related issues.

4) From January 1, 2008 to the present, the travel schedules and expense forms for any FTC employee for any travel associated with alcohol-related issues. All requests for speaking engagement travel, and contract regarding alcohol-related issues or alcohol-related entities, corporations, and/or associations.

5) Correspondence solely related to the FTC's study of alcohol advertising is exempt from this request. Do not include in this request material that is already publicly available on the FTC website as of May 20, 2011 In your search for the above matters you should include but not limit your search to any mention/contact of with: American Beverage Licenses, American Beverage Institute, Brewers Association, Costco Corporation, Center for Alcohol and Marketing, Center for Science in Public Interest, Century Council, Mercatus Center, Distilled Spirits Council of United States, Beer Institute, Wine Institute, National Beer Wholesalers Association, Institute for Justice, Wine and Spirits Wholesaler of America, McDermott Will & Emery, Kirkland and Ellis, National Association of Beverage Importers, National Retail Federation, Nation Conference of State Legislature, Retail Industry Leaders Association, Specialty Wine Retails Association, George Mason University, National Alcohol Beverage Control Administration, Pacific Institute of Research and Evaluation, Total Wine & Spirits, Wine America, National Restaurant Association, Mothers Against Drunk Driving, Marin Institute, any law firm, state chapters or associations or related entities of any of the aforementioned groups, any individual alcohol company manufacturer, distributor, importer or retail company.

Dkt. No. 13-1 at 4. Along with its request, Plaintiff stated its willingness to pay fees up to $1,500 to mitigate the costs of the search. *Id.* at 5. On May 24 and 26, 2011, the FTC's FOIA Unit staff sent Plaintiff two letters acknowledging receipt of the request for records and assigning the submission a Request Number. Dkt. No. 13-1 at 23-24. On June 22, 2011, Assistant General Counsel Joan Fina sent Plaintiff a subsequent letter informing them that the FTC was unable to fulfill the FOIA request within the 20-day statutory period. Dkt. No. 13-1 at 26; 5 U.S.C. § 552(a)(6)(A)(i). The statute allows for an extension of the 20-day deadline for various "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(iii). The FTC letter to Plaintiffs explained that the request "falls into one or more of the following three categories" (sic):

> (1) The need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request.
> (2) The need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request.

Dkt. No. 13-1 at 26. No further specifics were offered to justify the extension.

### C. FTC's FOIA Search Method

Upon receipt of Plaintiff's FOIA request, Michael Killoy ("Killoy"), FOIA Paralegal Specialist in the FTC's Office of General Counsel, was assigned to conduct the search. Mr. Killoy's affidavit has been submitted by Defendant and offered as evidence of the extent of the search conducted by the agency and reflects that Defendant conducted the search for responsive records dated from January 1, 2008 and forward. Mr. Killoy began the search using the name of the requesting counsel, John L. Carter. This search returned results for Mr. Carter's three prior requests. It is unclear to what extent the search within FOIAXpress went beyond searching only with Plaintiff counsel's name or to what extent the same documents were again disclosed following the latest search.

4

Mr. Killoy's affidavit indicates that he then searched the FTC's Oracle Business Objects XI database, "the case management and tracking system used by FTC staff to record and maintain up-to-date information on cases and matters opened by the FTC." Dkt. No. 13-1 at 52. The information returned by the search determines which divisions or offices within the FTC possess responsive records. Apparently, Mr. Killoy conducted the database search "using the search terms provided by Mr. Carter's request." *Id.* Mr. Killoy's affidavit also lists each of the departments or offices within which responsive records were found. That list does not include the Bureau of Economics or the Office of Policy and Planning, where Defendant expected many of the responsive records would be found. The *Vaughn* Index lists dozens of drafts, emails and other records that are authored by the Bureau of Economics or its staff, yet Mr. Killoy's affidavit indicates that it was not initially searched. *See e.g.* Dkt. No. 13-1 at 16-21.

Between June 1 and June 15, Mr. Killoy received responsive records from each of the chosen departments totaling more than 3,000 pages. He scanned each document, reviewed each page and made a recommendation to the Assistant General Counsel, Ms. Fina, as to whether each page of the document was responsive. He also recommended which pages should be redacted in part or in whole under FOIA exemptions. Having received all responsive records, the FOIA office sent the aforementioned letter to Plaintiff on June 22, 2011 informing him that the FTC would be unable to fulfill the request within the statutory 20-day time limit and would require an extension.

By July 27, 2011, the FOIA Office began granting Plaintiff access to some of the responsive records. The first partial response identified 123 pages of documents that were located and reviewed. Of those, 102 pages were withheld in full and 21 pages were provided to Plaintiff. In withholding the majority of the documents, the FTC cited FOIA Exemption 5, under

5 U.S.C. § 552(b)(5), because the documents "contained staff analyses, opinions, and recommendations that are deliberative and pre-decisional and are an integral part of the agency's decision making process." Dkt. No. 13-1 at 53. Specifically, Exemption 5 protects from disclosure "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[1] 5 U.S.C. § 552(b)(5).

On September 9, 2011, the FTC identified an additional 698 pages of responsive documents, 368 of which were withheld under FOIA Exemption 5. An undisclosed number of pages were also partially redacted. On September 26, 2011 the FOIA offices identified an additional 650 pages of responsive records and withheld about 350 pages in full. Finally, on September 30, 2011, the FTC made another disclosure, identifying over 1,100 pages of responsive records, over 900 of which were withheld under Exemptions 5 and 6.[2] The FTC's letter stated that the September 30th disclosure would be the final submission.

### D. FTC's Denial of Appeal and Refusal of Vaughn Index

On October 28, 2011, following the FTC's final determination, Plaintiff appealed to the FTC's General Counsel, challenging the agency's determination to withhold records in their entirety or portions thereof as well as the time it took the FTC to respond to the FOIA request. No. 13-1 at 39. Plaintiff argued that the requested documents were not exempt from disclosure and that the FTC acted in an arbitrary and capricious manner. Plaintiff specifically cited its

---

[1] According to the affidavit from Assistant General Counsel for Information and Legal Support Dione Jackson Stearns, the FTC asserted Exemption 5 "to protect internal memoranda, emails, notes, and drafts containing staff analyses, opinions, and recommendations pursuant to the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege." Dkt. No. 13-1 at 11.

[2] Exemption 6, under 5 U.S.C. § 552(b), provides that the agency may withhold from disclosure any "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The FTC cited this exemption for only about 35 pages of documents.

desire to avoid an additional round of litigation by requesting that the Chief FOIA Officer "describe the deleted materials in detail and specify the specific statutory basis for the denial as well as the agency's reasons for believing that the alleged statutory justification applies in this instance." Dkt. No. 13-1 at 40.

In a letter from FTC's General Counsel, Willard K. Tom, dated November 30, 2011, the agency summarily denied Plaintiff's appeal and refused to disclose any additional records, or offer justification for withholdings or the reasoning behind its decisions. Dkt 13-1 at 42. Mr. Tom wrote that Exemption (b)(5) applied to nearly all of the withheld materials. Those withheld documents, the letter claimed, clearly constituted predecisional and deliberative documents, and were exempt under the Court's determination in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). Finally, the letter denied Plaintiff's request to avoid litigation by seeking more substantive explanations for the withholdings. Mr. Tom described Plaintiff's request as "essentially a request for information typically provided in a *Vaughn* Index, which courts require in FOIA litigation to describe withheld records." Dkt. No. 13-1 at 45. The letter goes on to cite case law which provided that agencies were not *required* to provide a *Vaughn* Index until ordered to do so by a court after Plaintiff has exhausted all administrative remedies. *Id.* (citing *Judicial Watch, Inc. v. Clinton*, 880 F. Supp 1, 11 (D.D.C. 1995)). The Agency's response left Plaintiff with little choice but to pursue yet another FOIA action before this Court.

### E. FTC's Subsequent Disclosures Prior to the first Summary Judgment

After Plaintiff brought this action before the Court and more than a year after Plaintiff filed its FOIA request, the FTC identified additional documents for disclosure. They were identified only because the agency was required by the Court to prepare a *Vaughn* Index describing the documents withheld and the justification for employing a certain exemption after

suit was filed. Once this Court ordered that the FTC compile the Index,[3] the agency discovered additional responsive records that were improperly withheld under FOIA exemptions, and released 22 pages to Plaintiff that were previously full-denials, partial grants, or duplicates, on or around August 2, 2012.

In its Opposition to the Defendant's first Motion for Summary Judgment, Plaintiff again argued that the FTC was improperly withholding responsive documents. Again in response to Plaintiff, Defendant determined that it had withheld further documents that should have been released more than a year earlier. On October 10, 2012, the FTC delivered an additional 38 pages of responsive documents. Additionally, Defendant delivered a CD-Rom or DVD to Plaintiff that contained all 3,004 pages of the released documents in response to Plaintiff's claim that it had not received all of the documents Defendant claimed it had released.

### F. The First Motion for Summary Judgment

In response to the Motion for Summary Judgment, the Court conducted a *de novo* review of the adequacy of Defendant's FOIA compliance. The Court found that the FTC had failed to demonstrate that it conducted the search in a manner reasonably calculated to uncover *all* relevant documents. (Dkt. No. 27). *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246-77 (4th Cir. 1994). While the FOIA statute does not require that the agency search each and every office for responsive document, the Court found that Defendant's failure to include a search within the Bureau of Economics was unreasonable. In addition, the *Vaughn* Index did not provide sufficient information for the Court to determine whether each of the documents excluded under one of the claimed exemptions should have been disclosed. The agency failed to satisfy its

---

[3] Dkt. No. 11 "Agreed Order," dated June 21, 2012.

8

burden for withholding responsive documents. The Court, therefore, denied Defendant's Motion for Summary Judgment.

As part of the Court's February 21, 2013 Order (Dkt. No. 28), the parties were directed to jointly submit a proposed methodology for identifying a representative sample of withheld *Vaughn* Index documents to be reviewed by the Court. In addition, the FTC was ordered to search the Bureau of Economics for responsive documents, release non-exempt documents, and supplement its latest *Vaughn* Index accordingly.

### G. FTC's Compliance with February 21, 2013 Order

Following the Court's February 21, 2013 Order directing the agency to conduct additional searches, the FTC searched for responsive records in the Bureau of Economics. As described by Defendant, the search was more thorough than the typical FOIA search process. The FTC began the search by using the names of each FTC employee working within the BoE whose name also appeared in one of the responsive records previously provided to Plaintiff and the Court. In addition to searching the records of these employees, the FOIA Unit coordinated with the BoE FOIA contact for the first time. The BoE FOIA contact worked with the heads and deputy heads of the BoE to disseminate Plaintiff's FOIA request to any employees, new or old, who might possess responsive records. The FTC also asked each BoE employee it contacted to identify any additional employees who might possess responsive records. Ultimately, the FTC received documents from 33 BoE employees.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The standard of review in FOIA cases is limited to determining "whether (1) the district court had adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous." *Spannaus v. Dept. of Justice*, 813 F.2d 1285, 1288 (4th Cir. 1987). Summary Judgment motions, however, are not entitled to the clearly erroneous standard of review. Courts must instead review the FOIA action *de novo*. *Bowers v. Dept. of Justice*, 930 F.2d 350 (4th Cir. 1991) (citing *Simmons v. Dept. of Justice*, 796 F.2d 709, 710 (4th Cir. 1986)). Furthermore, the strong presumption in favor of disclosure of documents under FOIA places the burden on the agency to justify withholding any requested documents. *U.S. Dept. of State v. Ray*, 502 U.S. 164, 173 (1991). The burden remains on the agency when seeking to justify redactions within a particular document as well as when seeking to withhold an entire document. *Id.*

## ANALYSIS

To prevail on their cross-motions for summary judgment the parties must demonstrate that no genuine issues of material fact exist in regard to the adequacy or inadequacy of the FTC's FOIA search and disclosures. Under FOIA, the agency must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995). The question is not whether every responsive document has been unearthed, but whether the

agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents. *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246-77 (4th Cir. 1994).

In the February 21, 2013 Memorandum Opinion the Court described the shortcomings in Defendant's initial FOIA search and found that the withholdings were not sufficiently supported by the *Vaughn* Index. After the agency conducted additional searches, made significant new disclosures of previously withheld documents, and revised the *Vaughn* Index, the Court conducted an *in camera* review of a representative sampling of the withheld documents.

### A. ADEQUACY OF THE BOE SEARCH

For the reasons described in the Court's February 21, 2013 Memorandum Opinion, the FTC's initial search for responsive records was woefully inadequate. Following the Court's order directing Defendant to specifically search for responsive documents within the Bureau of Economics, however, the FTC conducted a thorough search. Ultimately, a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Having dedicated considerable resources to the search, the FTC satisfies its burden of demonstrating that its search was reasonably calculated to turn up all responsive records. As a result, Defendant was able to cure the deficiencies of its original search.

#### 1. The FTC's Thorough Search

Defendant went into great detail to outline its method for searching the BoE for responsive records. Importantly, the FTC explains the various additional steps it took to ensure that its efforts would uncover all records, including extremely voluminous compilations of data analyzed by the FTC's BoE. The steps described in Ms. Stearns' recent affidavit (Dkt. No. 48-1) illustrate the ways in which its latest search differed from its earlier, inadequate search. While it

11

is unclear why the FTC's FOIA Unit did not work with the BoE FOIA Unit initially, it is clear that this additional effort undertaken the second time around yielded better results. In addition, the FTC's efforts to contact each relevant employee named in the first responsive records and continue that process forward to identify other potential employees demonstrated the thoroughness of this latest BoE search. The search complied with the Court's February 21, 2013 order and was reasonably calculated to uncover all relevant materials.

### 2. Mr. Farrell's BoE Records

Plaintiff argues that Defendant's BoE search was inadequate for a number of reasons, including the fact that the records from Joseph Farrell, the former Director of BoE, had been destroyed. Plaintiff notes that these records were destroyed during the pendency of this litigation, in violation of the FTC's policy and potentially done in bad faith. In response, however, the FTC explains that no bad faith existed at the time the records were destroyed.

According to Ms. Stearns' Fourth Declaration, Mr. Farrell left the FTC on May 31, 2012 and, pursuant to FTC document retention policy, his documents and emails were deleted on or around June 30, 2012. At that time, the FTC had conducted the first search for responsive records relating to this matter and had determined that no responsive records would be found in the BoE. As such, Defendant did not know that any documents in the BoE would be subject to this litigation and, therefore, should be retained. While the conclusion was undoubtedly flawed, it was due to consistently employed document retention policies and not underlying bad faith. Although the result frustrates Plaintiff's interest in the destroyed documents, the FTC cannot be expected to search for and disclose what no longer exists. As such, the destruction of Mr. Farrell's records does not create a genuine issue of material fact in terms of the adequacy of Defendant's BoE search.

B.  **EXEMPTIONS**

1.  **Joshua Wright**

The parties have each expended significant time and effort to determine the precise relationship between Joshua Wright and the FTC at all times relevant to this FOIA request. Plaintiff has implied from the outset of this litigation that Mr. Wright should not be covered by FOIA's "consultant corollary" and, therefore, some of his communications should not be covered under Exemption (b)(5). The Court agreed that Mr. Wright's working relationship with the FTC over various periods of time needed to be clarified. On July 12, 2013 the Court issued an Order (Dkt. No. 51) directing Defendant to submit an affidavit from Mr. Wright describing the nature of his employment and consultant relationship with FTC at all relevant times. On August 12, 2013, Defendant submitted Mr. Wright's affidavit along with supporting material outlining why the FTC properly applied Exemption (b)(5) to the documents containing Mr. Wright's contributions, as outlined in the *Vaughn* Index.

After review of Mr. Wright's affidavit, Plaintiff continues to argue that there is a genuine issue in terms of whether Defendant properly employed the FOIA exemptions in the case of Mr. Wright's various communications and work products. In addition, the FTC admits in its submission that it made a significant mistake when it informed the Court that BoE Working Papers that have been published must undergo an additional review process prior to submission to any external journal. In fact, no such review process exists. As a result, the FTC had improperly withheld additional documents under Exemption (b)(5) based on post-publication communications between Mr. Cooper and Mr. Wright.

Having reviewed Mr. Wright's affidavit and the timing of the documents listed in the *Vaughn* Index that include him as an author or as the subject of the conversations, the Court is

13

satisfied that no genuine issues of material fact remain. Mr. Wright's affidavit confirms that he was either a full-time employee or a consultant of the FTC during the creation of each of the documents listed in the Folders provided to the Court. The FTC's withholdings and redactions involving Mr. Wright all concerned documents that were created at the time Mr. Wright was either a full-time employee or a consultant.

### 2. In Camera Review of Exemptions

In the Court's February 21, 2013 Order denying Defendant's Motion for Summary Judgment (Dkt. No. 27), the Court asked the parties to submit a proposed methodology for identifying a representative sample of withheld documents for *in camera* review. On March 25, 2013, the parties submitted a Joint Notice (Dkt. No. 29) outlining a method for the Court's review. Defendant submitted documents for review in a series of folders, numbered Folders 1 through 15. The parties agreed that Folders 2 and 12 did not need to be reviewed by the Court and Folders 5 and 10 contained no redacted records. For the remaining folders, the parties suggested that the Court randomly select four (4) documents from each folder and review those documents *in camera*. The Court agreed that the parties' proposed method for *in camera* review would best enable to Court to determine the appropriateness of the withholdings, while preserving the Court's resources.

Once again, the Court is tasked with reviewing the appropriateness of Defendant's FOIA production based on the results at this point in time rather than at the time the agency originally produced or withheld documents. Based simply on the number of revisions the FTC has made to its *Vaughn* Index since the outset of this litigation and the number of additional documents that have been produced after initially being withheld, the FTC's initial withholdings were, in part, inconsistent with the FOIA exemptions. Following additional disclosures and the Court's

14

February 21, 2013 Order, Defendant has ultimately satisfied its burden of demonstrating that the documents highlighted as withheld or redacted in Folders 1, 3, 4, 6, 7, 8, 9, 11, 13, 14, and 15 fell within one of the enumerated FOIA exemptions.

A number of the documents randomly selected for *in camera* review from the first set of folders were not disclosed because they were labeled "Not Responsive." All of these documents randomly selected falling into this category were appropriately withheld. In each, the subject matter of the documents was not within even the broadest interpretation of Plaintiff's FOIA request.

The vast majority of the documents selected for review were either redacted or withheld in their entirety based on Exemption (b)(5). Exemption (b)(5) allows the agency to withhold responsive records that consist of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* The purpose of this exemption has been interpreted to incorporate the deliberative process privilege, which shields from disclosure any documents that reflect the deliberations an agency undertook prior to arriving at a final decision. *See Defenders of Wildlife* (citing *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).

For each of the files selected, the Court looked to ensure that the subject matter and employees involved were covered under the exemption. Many of the files consisted of draft versions of documents that were disclosed to Plainitff in a final form as well as other documents such as hand written notes or line-edited memoranda. Each of these documents demonstrated an ongoing deliberative process within the agency that is not subject to disclosure. Other documents included email exchanges between staff and consultants that squarely fit within the deliberative-process exemption under (b)(5).

The FTC also withheld or redacted documents from its latest round of searches, including the BoE search, based on Exemptions (b)(3) and (b)(4). Exemption (b)(3) allows the agency to withhold or redact information that cannot otherwise be disclosed to the public based on a statute or regulation. In this case, the Federal Trade Commission Act provides that the FTC may not publicly disclose any trade secret or commercial information that is privileged or confidential. Similarly, Exemption (b)(4), allows the agency to withhold or redact information if that information is a trade secret. Therefore, both exemptions often apply to the same documents withheld by Defendant. After review, all the information withheld or redacted by the FTC found in the randomly sampled files were appropriately redacted or withheld due to trade secrets, pricing information, or other proprietary information.

After review of Defendant's *in camera* submission, the FTC has finally demonstrated that it has withheld only the documents which fall squarely into one of the FOIA exemptions. Furthermore, the redactions and segregation of relevant material was sufficiently narrow so that only the covered information was removed in each of the representative samples. Despite the FTC's continued revelations regarding the inadequacy of its initial FOIA search, the Court's present review is based on the final results. Ultimately, the FTC satisfied the requirements that it exempt from disclosure only those documents defined under one of the enumerated FOIA exemptions. After having conducted an *in camera* review of the folders submitted based on a representative sampling, it appears Defendant's withholdings were appropriate under exemptions in all of the randomly selected files. There remain no genuine issues of material fact for the Court to decide. Therefore, Defendant is entitled to summary judgment.

## CONCLUSION

After more than two years of litigation, Defendant has satisfied its burden of demonstrating that its FOIA search complied with the statute and that it withheld and redacted information consistent with FOIA's enumerated exemptions. It is disappointing that the agency's compliance with Plaintiff's FOIA request was, by its own admission, regrettable. Ultimately, however, the FTC remedied its failures and conducted a thorough search for responsive records in satisfaction of Plaintiff's original request. In addition, the FTC corrected its shortcomings by reviewing its withholdings and disclosures and forthrightly informing the Court and Plaintiff when it discovered a mistake. After the latest release of responsive documents to Plaintiff, there remain no genuine issues of material fact.

For the reasons stated herein, Defendant Federal Trade Commission's Second Motion for Summary Judgment (Dkt. No. 36) is GRANTED and Plaintiff Carter, Fullerton & Hayes, LLC's Cross-Motion for Summary Judgment (Dkt. No. 41) is DENIED. Should either party seek attorneys' fees it may do so by filing separate motions.

An appropriate Order shall issue.

October 4, 2013
Alexandria, VA

/s/
Liam O'Grady
United States District Judge